No. 60          September 9, 2014          479

IN THE OREGON TAX COURT
REGULAR DIVISION

John DUNZER,
*Plaintiff,*

*v.*

DEPARTMENT OF REVENUE,
*Defendant*,
*and*

CLATSOP COUNTY ASSESSOR,
*Defendant-Intervenor.*

(TC 5200)

Plaintiff (taxpayer) appealed from a Magistrate Division decision as to real market value (RMV) of property in Clatsop County. Taxpayer sought a lower RMV than that determined by Defendant-Intervenor Clatsop County Assessor (the county) and confirmed by the county board of property tax assessment. Following trial, taxpayer's valuation evidence was deemed credible but unpersuasive because taxpayer failed to provide support for the majority of his adjustment values. At trial, the information in support of his adjustment values that taxpayer attempted to provide the court was objected to as hearsay and ruled inadmissible. Therefore even if taxpayer had successfully discredited the county's valuation (which he did not) taxpayer would not have prevailed as he had failed to provide evidence sufficient to convince the court that a lower RMV for the subject property was warranted. Taxpayer's appeal was therefore denied.

Trial was held by telephone on May 19, 2014.

John Dunzer, Plaintiff (taxpayer) argued the cause *pro se*.

Heather L. Reynolds, Clatsop County Counsel, Astoria, argued the cause for Defendant-Intervenor Clatsop County Assessor (the county)

Decision for Defendant-Intervenor rendered on September 9, 2014.

**HENRY C. BREITHAUPT, Judge.**

## I.  INTRODUCTION

This matter is before the court following a trial held by telephone on May 19, 2014. Plaintiff John Dunzer (taxpayer) appeared *pro se* and requests a reduction in the real

market value (RMV) of property identified as Account 14127 (subject property) for the 2012-13 tax year. Defendant-Intervenor (the county), represented at trial by Clatsop County Counsel Heather Reynolds, requests that the court uphold the RMV determined by the board of property tax appeals. Defendant Department of Revenue tendered its defense of the case to the county.

## II.   FACTS

The subject property consists of a single-family residence and 0.23-acre triangular-shaped lot in "the Cove" neighborhood of Seaside, Oregon.

The subject property was built in 1994 and subsequently remodeled and improved. On the assessment date the subject property featured four bedrooms, four and one-half bathrooms,[1] an attached finished garage,[2] a central vacuum system, a finished attic, and an elevator providing access to all four floors.

Taxpayer appealed the 2012-13 tax year property tax assessment for the subject property to the Magistrate Division of the Oregon Tax Court. *Dunzer v. Clatsop County Assessor*, TC-MD No 130276D, 2013 WL 6330893 (Dec 5, 2013). The magistrate found for the county. *Id*. Taxpayer now appeals to the Regular Division.

At trial, the court granted the county's pre-trial Motion to Exclude Portions of Appraisal, and excluded pages 25 to 28 and 33 to 35 of Plaintiff's Exhibit 1 as hearsay. Plaintiff's Exhibit 2 was also excluded as hearsay, except for pictures taxpayer took himself on pages 14 and 16. The court received in evidence an appraisal report prepared by the county's appraiser Michael Grant (Grant).

---

[1] Michael Grant testified that the subject property has three and one-half bathrooms. Grant's number is supported by an undated listing on page 27 of Exhibit I-1, but contradicted by an undated listing on page 29 of that exhibit and by taxpayer's testimony. If Grant undercounted the number of bathrooms in his appraisal, such error benefits taxpayer by resulting in lower adjustments to the comparable properties.

[2] Plaintiff describes the garage of the subject property as "detached" on page 9 of Exhibit 1, but describes the garage as "attached" on Exhibit 1 page 42, and admits it is connected to the residence in page 8 of the same exhibit.

A.  *Taxpayer's Position*

Subject to the aforementioned exclusions, the court received in evidence a document titled "Subject Property Appraisal" prepared by taxpayer and purporting to support taxpayer's conclusion that the RMV of subject property is $398,000. Taxpayer testified that he revised his adjustment to $393,000 in response to information he learned from the county's appraisal. Taxpayer testified that he relied on the Oregon Department of Revenue's 2007 publication "The Sales Comparison Approach to Value" (DOR Manual) to support his RMV conclusion. Taxpayer's comparable sales approach considered two properties located on the same cul-de-sac as the subject property. Comparable 1 sold for $400,000 on October 31, 2012. Comparable 2 sold for $418,750 on April 5, 2012. The same properties were used as comparables in Grant's comparable sales approach.

Taxpayer adjusted the sale prices of the comparable properties based on the criteria of lot features, home type, construction quality, structural maintenance, building area, covered porches, heating, number of bathrooms, elevator and central vacuum.

1.  *Lot Features*

Taxpayer testified that he adjusted for "lot features" because the only view of the nearby ocean from subject property is from the roof, whereas in contrast, Comparable 1 enjoys a "direct ocean view" supporting a $5,000 negative adjustment, and Comparable 2 enjoys an "expansive ocean view" supporting a $15,000 negative adjustment. When challenged in cross-examination to provide support for those adjustment values, taxpayer testified that he relied on studies found in Exhibit 2. Exhibit 2 was not admitted into evidence; hence taxpayer's adjustment values for lot features are unsupported.

2.  *Home Type*

Taxpayer testified that he made a $25,000 positive adjustment for "home type" to Comparable 2 because, unlike subject property and Comparable 1, it is a townhome with a wall shared by an adjacent property. Taxpayer provided no support for this adjustment value.

### 3.  *Construction Quality*

Taxpayer testified that he made a $15,000 negative adjustment for "construction quality" to Comparable 2 because, unlike subject property and Comparable 1, it was built by a sophisticated owner and has numerous upgrades. Taxpayer testified that he has been inside Comparable 2 numerous times, but did not provide any support as to how the $15,000 adjustment value was determined.

### 4.  *Structural Maintenance*

Taxpayer testified that he made a $35,000 negative adjustment to each comparable for structural maintenance because "all of the deferred maintenance had been eliminated" from those homes prior to being sold, whereas the subject property continued to require similar maintenance on the assessment date. When challenged in cross-examination to provide support for those adjustment values, taxpayer testified that he relied on his discussions with contractors who performed the maintenance on the comparable properties, and pointed to the excluded Exhibit 2. Information provided to taxpayer by contractors who are not themselves before the court to testify is hearsay and as such is not permissible evidence. As Exhibit 2 was not admitted into evidence, taxpayer is without support for his structural maintenance adjustment value.

### 5.  *Building Area*

Taxpayer testified that the subject property is larger in terms of "building area" than Comparable 1 and that he made a $23,043 positive adjustment to that comparable. Taxpayer testified that the subject property is larger than Comparable 2 and that he made a $19,886 positive adjustment to that comparable. Taxpayer calculated the differences between the total cost per square foot of the subject property and of each of the comparables using adjustment values supported by tables in the DOR Manual.

### 6.  *Covered Porch*

Taxpayer testified that Comparable 1 has a larger covered porch than subject property and that he made a $23,670 positive adjustment to Comparable 1 to account for

that difference. Taxpayer testified that Comparable 2 has a larger covered porch than subject property and that he made a $16,290 positive adjustment to Comparable 2 to account for that difference. Taxpayer supported his covered porch adjustment by testifying that he made his adjustments using the values in the DOR Manual for covered porch adjustments.

### 7. *Heating*

Taxpayer testified that improving the heating coverage of his home to the same standard as the comparable properties would require the installation of a new, larger-capacity heating system. Taxpayer testified that the cost of such a system would be $11,000 and that he has adjusted the comparables negatively by that amount. When challenged in cross-examination to provide support for the $11,000 adjustment value, taxpayer testified that he relied on "contractor costing information" which was contained in Exhibit 2 and is not in the record. Accordingly, taxpayer's $11,000 adjustment for heating is without support.

### 8. *Number of Bathrooms*

Taxpayer testified that Comparable 1 has one less bathroom than the subject property, and that he adjusted Comparable 1 positively by $5,000 to account for this. Comparable 2 and the subject property have the same number of bathrooms and taxpayer concluded no adjustment was warranted for that comparable. When challenged to provide support for the $5,000 adjustment value, taxpayer testified that that value was "typically used in all of my appraisals," but taxpayer himself is not a certified appraiser and was not qualified for purposes of the trial in this case as an expert in real estate valuation. There are no other taxpayer appraisals in the record. Taxpayer's $5,000 adjustment value for number of bathrooms is without support.

### 9. *Elevator and Central Vacuum*

Taxpayer testified that the subject property has an elevator, unlike either comparable, and that taxpayer adjusted each comparable positively by $25,500 based on what taxpayer paid to have his elevator installed. Taxpayer

testified that the subject property and Comparable 1 have identical central vacuum systems and no adjustment was necessary, while Comparable 2 lacks a central vacuum system and was adjusted positively by $1,500. However, taxpayer adjusted both comparables positively by $27,000 for the category of "elevator and central vacuum," and thus incorrectly adjusted Comparable 1 under the logic of his own approach. During cross-examination, taxpayer supported his adjustment value for the presence of an elevator by testifying that he used the figure he believed that the subject property's elevator cost to install. Taxpayer did not substantiate this figure. On cross-examination taxpayer testified that he did not use the DOR Manual to determine his adjustment value for the central vacuum system and offered no explanation as to how he made his determination. Accordingly, taxpayer's adjustment values for both the elevator and central vacuum are without support.

B.   *County's Appraisal*

Grant is a certified property appraiser for the county and testified that he has performed numerous appraisals in contested cases. In his appraisal, Grant considered the cost approach, comparable sales approach and income approach, and concluded that the income approach was not applicable for valuing the subject property. Grant testified that the highest and best use of the subject property is its current use as a single-family home. Grant's cost approach proceeded by applying a 91.44 percent depreciation factor based on the subject property's original construction date to the values found in the Department of Revenue's 2005 Residential Cost Factor Book. Grant's cost approach supported a conclusion that the RMV of the subject property was $565,000 as of the assessment date.

In his comparable sales approach, Grant considered the same comparable properties as taxpayer. Grant determined that for the year 2012 no adjustment for time was warranted. Grant testified that the Department of Revenue's 2005 Residential Cost Factor book supported his adjustments to the comparable properties to account for their inferior square footage, the presence of an elevator and interior vacuum system in subject property, and a number

of other inventory differences. Grant testified that the comparable sales approach was most indicative of the RMV and that it supported the conclusion that the RMV of the subject property was $529,588 on the assessment date.

### III.   ISSUE

The issue in this case is the RMV of the subject property as of the assessment date of January 1, 2012.

### IV.   ANALYSIS

Real market value is defined as:

> "[T]he amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year."

ORS 308.205(1).[3] The RMV of real property is a question of fact. As the party requesting affirmative relief in this proceeding, taxpayer bears the burden of proof on questions of fact. ORS 305.427. To prevail in this appeal, taxpayer must affirmatively prove that the requested RMV of $393,000 is "more likely than not the value of the property." *Yarbrough v. Dept. of Rev.* (*Yarbrough II*), 21 OTR 40, 44 (2012).

Taxpayer has the burden of "proving his case by a preponderance of the evidence," which means "the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971). This court has stated that "it is not enough for a taxpayer to criticize a county's position. Taxpayers must provide competent evidence of the RMV of their property." *Poddar v. Dept. of Rev.*, 18 OTR 324, 332 (2005) (quoting *Woods v. Dept. of Rev.*, 16 OTR 56, 59 (2002)). "Competent evidence includes appraisal reports and sales adjusted for time, location, size, quality, and other distinguishing differences, and competent testimony from licensed professionals such as appraisers, real estate agents and licensed brokers." *Yarbrough II*, 21 OTR at 44.

Taxpayer provided the court with a document styled as an appraisal and his own testimony in support. In

---

[3] The court's references to the Oregon Revised Statutes (ORS) are to 2011.

contrast, the county provided the court with an appraisal report and testimony from an appraiser qualified as an expert. An appraiser's role in a valuation dispute is "to review and evaluate market data, and base conclusions on such data." *McKee v. Dept. of Rev.,* 18 OTR 58, 64 (2004). "Such a review of market data is the only way that the court can reasonably choose between competing valuations for any given parcel." *Yarbrough v. Dept. of Rev.* (*Yarbrough I*), 20 OTR 400, 402 (2011). Both taxpayer and the county offer competing valuations based on sales adjusted to be comparable to subject property. The comparable sales indicator of value is of primary importance in determining the outcome of this case. Because of its importance, in a case such as this one, "[p]ersonal conclusions with no basis in actual market data are entitled to little or no weight." *McKee*, 18 OTR at 64.

Taxpayer's valuation was credible but unpersuasive. As described above, taxpayer failed to provide support for the majority of his adjustment values. The information in support of his adjustment value that taxpayer attempted to provide the court was objected to as hearsay and ruled inadmissible. Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." ORS 40.450(3). A statement can either be "[a]n oral or written assertion" or "[n]onverbal conduct of a person, if intended as an assertion." ORS 40.450(1). The policy underlying exclusion of hearsay is that hearsay deprives the opposing party of the opportunity to confront the person making the statement and to test the veracity and accuracy of the statement by cross-examination. *State v. Kendrick*, 239 Or 512, 515, 398 P2d 471 (1965). Without evidence to support taxpayer's adjustments, the court regards these adjustments as personal opinions and affords them very little weight. *See McKee*, 18 OTR at 64. In this case, taxpayer's unsupported opinions are insufficiently persuasive to carry his burden of proof.

Taxpayer made some criticisms of Grant's appraisal. Grant is a certified appraiser whose adjustments are made based on the Department of Revenue 2005 Cost Factor Book. The court finds Grant's testimony to be both credible *and*

persuasive. Even if taxpayer successfully discredited Grant, which he did not, taxpayer would not prevail where, as here, he failed to provide evidence sufficient to convince the court that a lower RMV for the subject property was warranted. For the court to order a change to the RMV of the subject property, taxpayer must persuade the court that the RMV he is seeking is more likely than not the RMV of the subject property. Taxpayer has not done so in this case.

## V.  CONCLUSION

Taxpayer has not borne the burden of proving his proposed RMV for the property identified in the assessor's records as Account 14127. Now, therefore,

IT IS THE DECISION OF THIS COURT that taxpayer's appeal is denied.