IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

MARY JO STADE,  )
 )
 Plaintiff,  )  TC-MD 150369N
 )
 v.  )
 )
DEPARTMENT OF REVENUE,  )
State of Oregon,  )
 )
 Defendant.  )  **FINAL DECISION**

The court entered its Decision in the above-entitled matter on December 18, 2015.

Plaintiff timely filed a letter requesting her costs in the amount of $252, which represents her

filing fee, on December 28, 2015.  Defendant timely filed an Objection to Award of Costs and

Disbursements on December 30, 2015.  Plaintiff did not submit a request to file a response to

Defendant's Objection.  This matter is now ready for final decision by the court.  The court's

Final Decision incorporates its Decision without change.  The court's analysis and determination

of Plaintiff's request for costs and disbursements is contained in section III.

Plaintiff appeals Defendant's Notice of Refund Denial dated June 19, 2015, for the 2014

tax year.  A trial was held in the Oregon Tax Courtroom on October 14, 2015, in Salem, Oregon.

Plaintiff appeared and testified on her own behalf.  Plaintiff's son, Barry Stade (Stade), also

testified on behalf of Plaintiff.  Tony Inovejas (Inovejas) appeared and testified on behalf of

Defendant.  Plaintiff's Exhibits 1 through 17 and Defendant's Exhibits A through K were

received without objection.

## I.  STATEMENT OF FACTS

Plaintiff testified that she became a grandmother in 2012 and that her grandchild was her

qualifying dependent in 2014.  Stade testified that he is Plaintiff's son and that he has two

children, one born in 2012 and the second born in 2015. He testified that, in 2014, his older child permanently resided at Plaintiff's home because he was not able to care for the child. Plaintiff testified that she worked full time as a paralegal in 2014 and for many years prior.

Plaintiff testified that, for the 2014 tax year, she claimed a working family child care credit (working family credit) of $4,608, which was denied by Defendant. Inovejas testified that Defendant agrees that Plaintiff's grandchild was her qualifying child in 2014 and agrees that Plaintiff worked full time in 2014. Inovejas testified that Plaintiff was "eligible" for the working family credit in 2014 based on her full time work schedule and qualifying child, but she failed to adequately substantiate claimed payments.

A.    *Plaintiff's Household and Income*

Plaintiff testified that, in 2014, her household included herself, her son, his girlfriend, and her grandchild. (*See* Ptf's Ex 6 at 1.) She wrote that she was unable to leave her grandchild with her son and his girlfriend while Plaintiff was at work due to their "ongoing addiction problems, and behavior associated with such addiction[.]" (*Id.*)

Plaintiff testified that, in 2014 her wages were about $38,000 to $39,000 and her 1099 income was just under $6,000. (*See* Def's Ex K.) Inovejas testified that Plaintiff's wages were about $35,000 with "mandatory deductions." (*See id.* at 1.) He testified that Plaintiff reported a loss of approximately $26,000 on her 2014 Schedule Cs and asked how she paid for that loss. (*See id.* at 3-4.) Plaintiff testified that she had additional funds from a 2006 wrongful death settlement that she used to pay for household and other expenses. She testified that she received payments from three annuities under that settlement. Plaintiff testified that, in addition to working as a paralegal, she has been a sports agent since 2001. She testified that it was initially

/ / /

a hobby, but it has expanded into a business over time. Plaintiff testified that she earned income as a sports agent in 2015, but not in 2014.

B.      *Plaintiff's Child Care Provider*

Plaintiff testified that she used KinderCare for child care in 2013. She testified that she considered other day care facilities in 2014 and found that the costs ranged from $1,100 to $1,700 per month. Plaintiff testified that, in 2014, a family friend Fred Reeder (Reeder),[1] provided child care for her grandchild at a discounted rate. (*See* Ptf's Ex 8.) She testified that she paid Reeder about $400 to $500 twice per month when she was paid.

Stade testified that Reeder was a "family friend" and was "like family." He testified that, in 2014, Reeder provided care for his child from 8:00 a.m. to a little after 5:00 p.m. Stade testified that child care arrangement continued until the Oregon Department of Human Services took custody of his child in 2015. He testified that Plaintiff paid Reeder about $800 per month for child care.

Plaintiff originally filed her 2014 Schedule WFC reporting $12,612 paid to KinderCare. (Def's Ex A.) Plaintiff provided a 2014 Schedule WFC reporting payments of $12,406 to the child care provider "Freddie Reeder/Reeder Enterprises, LLC." (Ptf's Ex 5.) The amount of $12,406 was crossed out and $11,521.78 was handwritten with the initials "MS." (*Id.*) Inovejas testified that Plaintiff's claimed child care payments have changed several times: $12,612 to KinderCare, then $12,406 and $11,521.78 to Reeder. (*See* Def's Exs A, B; Ptf's Ex 5.)

/ / /

/ / /

---

[1] Plaintiff's Form W-10, "Dependent Care Provider's Identification and Certification," identifies Plaintiff's child care provider as "Fred Reader." (Ptf's Ex 8.) The majority of exhibits submitted list Plaintiff's child care provider as Fred or Freddie Reeder. (*See, e.g.,* Ptf's Exs 3, 5; Def's Exs C, E, G.)

C.    *Substantiation of Child Care Payments*

Plaintiff testified that Reeder was available to talk to Defendant, but Defendant did not call him.  (*See* Ptf's Ex 10 (letter with Reeder's phone number).)  She testified that she gave a form 1099 to Reeder, although she cannot control whether he filed his 2014 income tax return.

Plaintiff testified that she provided a packet of "Dependent Care Receipts" signed by Freddie Reeder.  (Ptf's Ex 3.)  The receipts were dated the last day of each month, with the exception of two receipts, which were dated November 26, 2014, and December 30, 2014.  (*Id.* at 7.)  The receipts identify the "Person Providing Care" as "Freddie Reeder/Reeder Enterprises, LLC" and include a tax ID number.  (*Id.*)  The receipts report monthly payments of $990 in January, February, March, April, May, and June 2014.  (*Id.* at 2-4.)  The July 2014 receipt was for $926; the August 2014 receipt was for $966; the September 2014 receipt was for $956; the October 2014 receipt was for $981; the November 2014 receipt was for $1,405; and the December 2014 receipt was for $1,229.  (*Id.* at 5-7.)  The receipts total $12,403.  (*See id.*)

Plaintiff testified that she provided her 2014 bank statements showing cash withdrawals for child care payments between April 30, 2014, and December 31, 2014.  (*See* Ptf's Ex 4.)  Her bank statements include the following cash withdrawals identified by Plaintiff as for "daycare":

| Date | Withdrawal |
|---|---|
| April 30, 2014 | $303.00 |
| May 1, 2014 | $463.00 |
| May 14, 2014 | $163.00 |
| May 29, 2014 | $203.00 |
| July 14, 2014 | $443.00 |
| July 30, 2014 | $483.50 |
| August 14, 2014 | $483.50 |
| August 28, 2014 | $483.00 |
| September 12, 2014 | $483.50 |
| September 27, 2014 | $263.00 |
| September 28, 2014 | $210.83 |
| October 14, 2014 | $483.00 |
| October 30, 2014 | $498.00 |

| | |
|---|---|
| November 13, 2014 | $208.77 |
| November 13, 2014 | $216.18 |
| November 13, 2014 | $483.50 |
| November 26, 2014 | $498.00 |
| December 12, 2014 | $483.50 |
| December 15, 2014 | $163.50 |
| December 30, 2014 | $483.50 |

(Ptf's Ex 4.) The cash withdrawals total $7,495 during that time period.[2] (*See id.*)

Inovejas testified that child care payments may be in cash, but cash payments require more scrutiny. He testified that Plaintiff's receipts were not contemporaneous; the tax ID listed on the receipts was an EIN issued in 2015, not 2014. (*See* Def's Exs C, E.) Inovejas testified that Reeder's name is spelled differently and the signature on his New York identification card differs from the signature on the receipts.[3] (*See* Def's Exs C, G.) Inovejas testified that neither Reeder nor Reeder Enterprises are certified or registered day care providers. (*See* Def's Ex H.) With respect to Plaintiff's bank statements, Inovejas testified that they only show that cash was withdrawn; not how it was used. (*See* Ptf's Ex 4.)

## II. ANALYSIS

The issue before the court is whether Plaintiff is entitled to a working family credit and a child care credit for the 2014 tax year based on claimed child care expenses.

ORS 315.262 provides a refundable credit, the working family credit, for qualifying taxpayers to partially offset child care costs incurred while taxpayers are working, attending school, or seeking employment.[4] "A qualified taxpayer shall be allowed a credit against the taxes otherwise due under ORS chapter 316 equal to the applicable percentage of the qualified

---

[2] To calculate the total, all reported withdrawals were rounded down to the nearest $1.

[3] Plaintiff explained in a letter to Defendant that Reeder is a "New York resident" but had "resided in Portland since his nephew, Greg Oden, was drafted by the Portland Trail Blazers." (Ptf's Ex 10.)

[4] The court's references to the Oregon Revised Statutes (ORS) are to 2013.

taxpayer's child care expenses (rounded to the nearest $50)." ORS 315.262(3). "Child care" is defined as "care provided to a qualifying child of the taxpayer for the purpose of allowing the taxpayer to be gainfully employed, to seek employment or to attend school on a full-time or part-time basis * * *[.]" ORS 315.262(1)(a). "Child care expenses" are "the costs associated with providing child care to a qualifying child of a qualified taxpayer." ORS 315.262(1)(b). "Qualifying child" has the same meaning as in IRC section 152(c). ORS 315.262(1)(f).

ORS 316.078 provides a nonrefundable credit, the child care credit, for certain "employment-related expenses," including child care, paid by a taxpayer for the care of a dependent child or children. The child care credit is specifically tied to IRC section 21; it is "equal to a percentage of employment-related expenses allowable pursuant to" IRC section 21. ORS 316.078(1). IRC section 21(a)(1) provides a credit for a "percentage of the employment-related expenses * * * paid by [a taxpayer] during the taxable year." Expenses are "employment related" if they are "incurred to enable the taxpayer to be gainfully employed for any period for which there are 1 or more qualifying individuals with respect to the taxpayer." IRC § 21(b)(2)(A). "Qualifying individuals" include the taxpayer's dependents "who [have] not attained age 13." IRC § 21(b)(1)(A). The "employment-related expenses" include "expenses for the care of a qualifying individual." IRC § 21(b)(2)(A)(ii).

Plaintiff bears the burden of proof and must establish her case by a "preponderance" of the evidence. ORS 305.427. A "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence * * *." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971). This court has stated that the preponderance standard means "more likely than not." *See Dunzer v. Dept. of Rev.*, 21 OTR 479, 485 (2014). "[I]f the evidence is inconclusive or

/ / /

unpersuasive, the taxpayer will have failed to meet [her] burden of proof * * *." *Reed v. Dept. of Rev.*, 310 Or 260, 265, 798 P2d 235 (1990).

There is no dispute in this case that Plaintiff had a qualifying child in 2014 or that Plaintiff worked full time during the 2014 tax year. The parties disagree whether Plaintiff has provided adequate substantiation of the amount she paid for child care. Additionally, Defendant questions whether Plaintiff's claimed child care payments were arm's-length, given that her child care provider was a family friend. (*See* Ptf's Ex 13 at 1.)

A.    *Substantiation*

It is important for taxpayers claiming the working family credit to maintain good records and provide adequate substantiation that they are entitled to the credit claimed. Canceled checks or contemporaneous, signed receipts that include the date, the name of the individual who paid cash, and the amount paid are examples of evidence that provides adequate substantiation. *See Shirley v. Dept. of Rev.*, TC-MD 130451D, WL 811543 at *3 (Mar 3, 2014).

Plaintiff provided signed receipts reporting total payments of $12,403, and bank statements from April 30, 2014, through December 31, 2014, demonstrating cash withdrawals totaling $7,495 during that time period. Plaintiff testified that she paid Reeder $400 to $500 twice per month when she was paid. Consistent with Plaintiff's testimony, her cash withdrawals all occurred in the middle and at the end of each month, with the exception of a cash withdrawal on May 1, 2014. In most months, her cash withdrawals totaled between $400 and $500 twice per month. In November and December 2014, she withdrew over $1,000 each month, but provided no explanation for the cash withdrawals in excess of $1,000.

Plaintiff's evidence was less than ideal: her child care provider, Reeder, did not testify at trial; her receipts were not contemporaneous; and she failed to explain the two months with cash

withdrawals in excess of $1,000 each month. However, the court is persuaded that Plaintiff paid Reeder some amount for child care in 2014. That conclusion is supported by Plaintiff's sworn trial testimony and receipts signed by Reeder, acknowledging that he received payments from Plaintiff for child care in 2014.

In determining the amount of child care payments substantiated in this case, the court gives less weight to the amounts reported on Plaintiff's receipts because they were not issued contemporaneously and appear to have been created to match the cash withdrawals from Plaintiff's bank account. The court finds that Plaintiff's bank statements provide the most reliable evidence of her child care payments in 2014. From April 30, 2014 to October 30, 2014, Plaintiff substantiated child care payments totaling $4,961.[5] Plaintiff substantiated child care payments of $981 in November 2014 and of $966 in December 2014. The additional cash withdrawals in November and December 2014 are not allowed because Plaintiff failed to provide an explanation why her child care payments exceeded $1,000 in those months. In total, Plaintiff substantiated child care payments of $6,908 in 2014. Rounding that amount "to the nearest $50" results in allowed child care expenses of $6,900. *See* ORS 315.262(3).

B.      *Arm's-length Transaction*

In its Notice of Refund Denial, Defendant identified Plaintiff's personal relationship with Reeder as one of the reasons for its denial of her claimed working family credit. (*See* Ptf's Ex 13 at 1.) The Oregon Department of Revenue has promulgated a rule that states, "[c]osts associated with child care do not include * * * * * (F) [t]ransactions that are not arm's-length or have no economic substance." OAR 150-315.262(3)(b); *see also Carter v. Dept. of Rev.,* TC-MD 080689C, WL 1351818 at *3 (Apr 30, 2009) ("[t]ransactions between related parties

---

[5] To calculate totals, all reported withdrawals were rounded down to the nearest $1.

rightly generate heightened scrutiny, because of the increased potential for favorable treatment (*e.g.*, leniency when the taxpayer cannot afford some or all of the amount due)").

Plaintiff and Stade each testified that Reeder was a "family friend." No testimony or evidence was presented to suggest that Reeder was related to Plaintiff, or that he was willing to provide Plaintiff with free child care. Plaintiff testified that Reeder was willing to provide child care at a discounted rate, presumably because he was a family friend. She testified that she previously used KinderCare for child care and that other day care facilities charged between $1,100 and $1,700 per month. By contrast, Reeder was willing to provide child care for $800 to $1,000 per month. The court finds no evidence to support the conclusion that Reeder provided Plaintiff with free child care and is persuaded by a preponderance of the evidence that Plaintiff paid Reeder at least $6,900 for child care in 2014.

## III. COSTS AND DISBURSEMENTS FACTS AND ANALYSIS

The Magistrate Division has discretionary authority under ORS 305.490(2) to award costs and disbursements to the prevailing party. *Withol I. v. Dept. of Rev.*, 21 OTR 260, 267–68 (2013). This court has previously observed that the term "prevailing party" is not defined for purposes of "costs and disbursements" and has looked to the definition of "prevailing party" for purposes of making an award of attorney fees found in ORS 20.077(2). *Wihtol v. Mutlnomah County Assessor*, TC-MD 120762N, WL 274126 at *2 (Jan 24, 2014). ORS 20.077(2) defines the prevailing party as "the party who receives a favorable judgment or arbitration award on the claim." "[U]nder ORS 20.077, the 'prevailing party' is to be determined on a 'claim-by-claim' basis." *Robert Camel Contracting, Inc. v. Krautscheid*, 205 Or App 498, 504, 134 P3d 1065 (2006). "To determine who is the prevailing party on each claim, a court must weigh 'what was

/ / /

sought by each party against the result obtained.' " *Beggs v. Hart*, 221 Or App 528, 537–38, 191 P3d 747 (2008) (quoting *Lawrence v. Peel*, 45 Or App 233, 243, 607 P2d 1386 (1980)).

In this case, Plaintiff appealed from a Notice of Refund Denial in which Defendant disallowed Plaintiff's working family credit and child care credit for the 2014 tax year based on Plaintiff's claimed child care expenses totaling $12,612. Following trial, the court issued a Decision allowing Plaintiff partial relief: The court found Plaintiff had substantiated child care expenses totaling $6,900 and should be allowed a working family credit and a child care credit based on that amount. The court concludes that Plaintiff was the prevailing party in this matter.

"The award of costs and disbursements is entirely discretionary with the court." *PGE v. Dept. of Rev.*, 11 OTR 78, 94 (1988) (citing *Ruth et ux v. Hickman*, 214 Or 490, 330 P2d 722 (1958)). Having concluded that Plaintiff was the prevailing party in this matter, the court must next determine, in its discretion, whether to award costs and disbursements to Plaintiff. In *Wihtol v. Multnomah County Assessor*, TC-MD 120762N, WL 274126 at *5 (Jan 24, 2014), this court discussed some considerations that may be relevant to the court's exercise of its discretion to award costs. Those considerations included whether the tax return initially filed by the taxpayer was accurate, whether the taxpayer took advantage of available administrative review, and whether the outcome on appeal involved wins and losses for both parties. *See id.*

Plaintiff's Schedule WFC as originally filed included several errors: She incorrectly identified her child care provider as KinderCare and reported her child care expense as $12,612. Subsequently, Plaintiff revised her child care provider to Reeder and her claimed child care expenses to $12,406 and then to $11,521.78. The court found that Plaintiff ultimately substantiated child care payments totaling $6,900, but disallowed her remaining claimed child

/ / /

care payments. In sum, Plaintiff failed to file an accurate tax return, and her appeal resulted in only partial relief. Under those circumstances, the court declines to award Plaintiff her costs.

## IV. CONCLUSION

After careful consideration, the court finds that Plaintiff substantiated child care expenses of $6,900 and is allowed a 2014 working family credit and a 2014 child and dependent care credit based on her substantiated child care expenses. Plaintiff's request for costs is denied. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff is allowed a 2014 working family credit and a 2014 child and dependent care credit based on child care expenses of $6,900.

IT IS FURTHER DECIDED that Plaintiff's request for costs is denied.

Dated this ____ day of January 2016.

_____
ALLISON R. BOOMER
MAGISTRATE

*If you want to appeal this Final Decision, file a complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within 60 days after the date of the Final Decision or this Final Decision cannot be changed. TCR-MD 19 B.*

*This document was filed and entered on January 21, 2016.*