IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

LINDSAY A I BROWN,                    )
                                      )
              Plaintiff,              )    TC-MD 150425N
                                      )
       v.                             )
                                      )
DEPARTMENT OF REVENUE,                )
State of Oregon,                      )
                                      )
              Defendant.              )    **FINAL DECISION**

The court entered its Decision in the above-entitled matter on June 30, 2016. Plaintiff

timely filed a Statement for Costs and Disbursements (Statement) on July 14, 2016, requesting

her costs in the amount of $3,872. Defendant timely filed an objection to Plaintiff's Statement

on July 20, 2016. The court's analysis and determination of Plaintiff's request for costs and

disbursements is contained in section III. The court's Final Decision otherwise incorporates its

Decision without change.

Plaintiff appeals Defendant's Notice of Refund Denial dated October 6, 2015, for the

2014 tax year.[1] A trial was held in the courtroom of the Oregon Tax Court on March 30, 2016,

in Salem, Oregon. Greg Ripke, CPA, appeared on behalf of Plaintiff. Plaintiff and Bree Sweet

(Sweet), Plaintiff's child care provider, testified on behalf of Plaintiff. Tony Inovejas, Tax

Auditor, appeared and testified on behalf of Defendant. Plaintiff's Exhibits 1 through 27 and

Defendant's Exhibits A through J were received without objection.

/ / /

/ / /

---

[1] Plaintiff attached to her Complaint a Notice of Proposed Adjustment and/or Distribution dated May 22, 2015, but Defendant subsequently issued a Notice of Refund Denial on October 6, 2015. (*See* Compl at 3; Ans at 1.)

## I. STATEMENT OF FACTS

On both her 2014 federal and Oregon personal income tax returns, Plaintiff reported her federal adjusted gross income was $11,377, which was comprised of $10,487 wages and $890 unemployment compensation.[2] (Ptf's Ex 26 at 1; Def's Ex E at 1.) Plaintiff's 2014 wages, as reported on two Forms W-2, were $6,269 paid by Greg Ripke (Ripke) and $4,218 paid by Green Streak Automotive LLC (Green Streak). (Def's Ex D.) Plaintiff claimed a child and dependent care credit of $900 and a working family child care credit of $2,566. (Ptf's Ex 26 at 2.) She filed a 2014 Schedule WFC reporting child care payments totaling $6,415 to Sweet. (Def's Ex F.)

A.    *Plaintiff's 2014 Employment and Income*

Plaintiff testified that she worked for Ripke from January 2014, through mid-April 2014. (*See* Ptf's Ex 2, 10.) An "Employee Detail" for Ripke indicates Plaintiff worked from the beginning of February 2014 through April 18, 2014, and she was paid $6,269 (gross) during that time period. (Ptf's Ex 10.) Plaintiff testified that, from April 22, 2014, through July 2014 she worked for "Stumph Enterprises" (Stumph). (*See* Ptf's Ex 2.) She testified that Stumph was an automobile shop owed by a husband and wife who employed Plaintiff while the wife was sick. Plaintiff testified that she obtained that position through friends and worked full time, five days per week. She testified that she was paid $10 per hour in cash. Plaintiff testified that she did not keep track of her income from Stumph; instead, she recreated her income based on an estimate of 512 hours worked, for total income of $5,120. (*See id.*) She did not receive a W-2 from Stumph.

Plaintiff testified that Stumph reorganized and changed its name to Green Streak. She testified that she worked for Green Streak from August 4, 2014, until October 31, 2014. (*See*

---

[2] Plaintiff's bank deposits indicated that her total 2014 unemployment compensation was $1,068. (Ptf's Ex 20 at 2-3; *see also* Ptf's Ex 2.) Plaintiff did not address that discrepancy in her testimony.

Ptf's Ex 2, 9.) An "Employee Detail" for Green Streak indicates Plaintiff worked from the beginning of September 2014, through November 5, 2014, and was paid $4,217.50 (gross) during that time period. (Ptf's Ex 9.) Plaintiff testified that Green Streak paid her by check.

Plaintiff testified that, from November 1, 2014, through December 12, 2014, she worked for Wooster Enterprises (Wooster), an agriculture business. She testified that she was paid for piece work. Plaintiff testified that she did not keep track of the amount she was paid by Wooster, but it was not much. She estimated that she received about $50 per day, which is $1,400 based on 28 days of work. Plaintiff did not receive a W-2 from Wooster.

Plaintiff testified that she could not recall with certainty when she received the unemployment compensation in 2014, although she thought it was in November and December 2014 while she was working for Wooster. Plaintiff testified that she had income during that time period, but it was not sufficient so she continued to receive unemployment. She testified that she was required to electronically submit proof of her job search to the Employment Department, and she did so once per week. Plaintiff did not provide those records to the court.

Plaintiff testified that she provided a complete list of her 2014 employment and income to Defendant in November 2015. (*See* Ptf's Ex 2.) She testified that she previously failed to report her income from Stumph and Wooster, which totaled approximately $6,520. Plaintiff testified that she agrees to an upward adjustment of her 2014 income based on her unreported wages. (*See* Ptf's Ex 27 (proposed amended 2014 Oregon income tax return).) Plaintiff testified that she had no other sources of income in 2014. She testified that she had no relationship with her child's father and, although he was ordered to pay child support, he did not do so in 2014. An Exhibit submitted by Plaintiff detailing her 2014 income also lists the earned income credit,

/ / /

Oregon refunds for 2012 and 2013, and food stamps. (Ptf's Ex 2.) Plaintiff's reported total 2014 income from all sources was $26,176. (*Id.*)

Plaintiff provided her bank records from 2014. (Ptf's Ex 20.) Those records indicate that Plaintiff received unemployment compensation in January 2014 and during the first week of February 2014. (*Id.* at 2–3.) Her bank records do not reflect the receipt of any unemployment compensation in November or December 2014. (*Id.* at 19–21.) Plaintiff's total monthly deposits ranged from $370 in December 2014 to $4,030 in March 2014. (*See id.* at 1–21.) Not including unemployment compensation, Plaintiff's 2014 deposits totaled $15,569.97. (*Id.*)

B.    *Plaintiff's Child Care*

Plaintiff testified that her child was four years old in 2014. She testified that she made weekly child care payments at the rate of $25 to $30 per day. Plaintiff testified that she was working while her child was in child care. Plaintiff testified that her child care provider, Sweet, gave her a receipt at the end of 2014 reporting total cash payments of $6,415. (Ptf's Ex 4.) Plaintiff also provided a copy of her child care contract, signed September 28, 2011, and a spreadsheet listing the dates of child care. (Ptf's Ex 8, 25.) She testified that the child care contract was still in effect as of 2014.

Sweet testified that, in 2014, she operated a small daycare out of her home. She testified that she ran the daycare from 2010 until 2014 or 2015, while one of her own children was young and not yet in school. Sweet testified that she cared for no more than three children at a time. She testified that she is not related to Plaintiff or Plaintiff's child. Sweet testified that she prepared the record listing the dates that she cared for Plaintiff's child and the fee charged. (Ptf's Ex 8.) She testified that the record was one that she prepared in the ordinary course of her business and she considered it to be accurate. Sweet testified that, in 2014, Plaintiff told her that

she was working and the location of her work. She testified that Plaintiff paid her in cash once per week. Sweet testified that she issued Plaintiff a receipt at the end of the year, as she did with her other clients. (Ptf's Ex 4.) She testified that the end of the year receipt was based upon her records. Sweet testified that she would have issued receipts each time she was paid if Plaintiff had asked. She also testified that the child care contract signed in 2011 was in effect in 2014.

C.     *Defendant's Audit*

Inovejas testified that he searched Employment Department records for evidence of Plaintiff's Employment with Stumph and Wooster and found none. He testified that he only found proof of her employment with Ripke and Green Streak. (*See* Def's Ex B, C.) Inovejas testified that he concluded Plaintiff only worked for the six months she was employed by Ripke and Green Streak: February through April, and September through November. (*See* Def's Ex I.) He testified that Plaintiff may only claim a working family child care credit for child care expenses incurred while she was working, seeking employment, or attending school. Inovejas testified that he matched the dates that Plaintiff was employed with her child care schedule and determined that Plaintiff should be allowed a working family credit and child care credit based upon child care expenses of $2,865 for 118 days worked. (*See id.*)

## II. ANALYSIS

The issue before the court is whether Plaintiff is entitled to a working family credit and a child care credit for the 2014 tax year based on her claimed child care expenses.

ORS 315.262 provides a refundable credit, the working family credit, for qualifying taxpayers to partially offset child care costs incurred while taxpayers are working, attending school, or seeking employment.[3] "A qualified taxpayer shall be allowed a credit against the

---

[3] The court's references to the Oregon Revised Statutes (ORS) are to 2013.

taxes otherwise due under ORS chapter 316 equal to the applicable percentage of the qualified taxpayer's child care expenses (rounded to the nearest $50)." ORS 315.262(3). "Child care" is defined as "care provided to a qualifying child of the taxpayer for the purpose of allowing the taxpayer to be gainfully employed, to seek employment or to attend school on a full-time or part-time basis[.]" ORS 315.262(1)(a). "Child care expenses" are "the costs associated with providing child care to a qualifying child of a qualified taxpayer." ORS 315.262(1)(b). "Qualifying child" has the same meaning as in IRC section 152(c). ORS 315.262(1)(f).

ORS 316.078 provides a nonrefundable credit, the child care credit, for certain "employment-related expenses," including child care, paid by a taxpayer for the care of a dependent child or children. The child care credit is specifically tied to IRC section 21; it is "equal to a percentage of employment-related expenses allowable pursuant to" IRC section 21. ORS 316.078(1). IRC section 21(a)(1) provides a credit for a "percentage of the employment-related expenses * * * paid by [a taxpayer] during the taxable year." "Expenses are employment-related expenses only if they are for the purpose of enabling the taxpayer to be gainfully employed. The expenses must be for the care of a qualifying individual or household services performed during periods in which the taxpayer is gainfully employed or is in active search of gainful employment." Treas Reg § 1.21-1(c). "Qualifying individual[s]" include the taxpayer's dependents "who [have] not attained age 13." IRC § 21(b)(1)(A).

Plaintiff bears the burden of proof and must establish her case by a "preponderance" of the evidence. ORS 305.427. A "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971). This court has stated that the preponderance standard means "more likely than not." *See Dunzer v. Dept. of Rev.*, 21 OTR 479, 485 (2014). "[I]f the evidence is inconclusive or unpersuasive, the

taxpayer will have failed to meet [her] burden of proof * * *." *Reed v. Dept. of Rev.*, 310 Or 260, 265, 798 P2d 235 (1990).

A.    *Plaintiff's 2014 Employment and Income*

Plaintiff testified that she worked for Stumph and Wooster in 2014 and failed to report the income she received from those employers on her 2014 income tax return. Defendant was unable to find any record of Plaintiff's employment with Stumph or Wooster. The evidence submitted on this question is as follows: Plaintiff's testimony describing her employment; Plaintiff's 2014 bank records; Sweet's testimony that Plaintiff was working while her child was in Sweet's care; and Sweet's 2014 child care records.

Assuming Plaintiff's testimony is true, she failed to report approximately $6,250 of income for the 2014 tax year. Plaintiff's failure to report her 2014 income harms Plaintiff's credibility. Plaintiff's admission that she failed to report income is not against her interest in this case because Plaintiff must prove that she was employed in order to claim the working family credit and child care credit. In that respect, Plaintiff's testimony is self-serving. Plaintiff's bank records tend to support her testimony that she worked for Stumph and Wooster because they reveal deposits in May through August, November, and December, and because Plaintiff deposited more money than she reported as gross income on her 2014 tax returns. The court found Sweet to be a credible witness and is persuaded by her testimony and her records that she provided child care for Plaintiff on the dates identified and that Plaintiff paid her $6,415 for child care. Sweet's testimony and records corroborate Plaintiff's testimony that she worked for Stumph and Wooster in 2014.

Under IRC section 61(a), gross income is defined as "all income from whatever source derived" and specifically includes "[c]ompensation for services." Plaintiff testified that Stumph

paid her $10 per hour for 512 hours worked between April 22, 2014, and July 2014, for a total of $5,120. Plaintiff's calculation of her hours worked is consistent with Sweet's child care record for the period of time between April 22, 2014, and August 1, 2014. (*See* Ptfs' Ex 8.) Plaintiff testified that she worked for Wooster from November 1, 2014, through December 12, 2014, and received approximately $50 per day, or $1,400 total. Those dates are also consistent with Sweet's child care records. The court finds that Plaintiff's 2014 gross income is increased by $6,520 to include her previously unreported compensation.

B.      *Plaintiff's 2014 Unemployment*

On her original 2014 federal return, Plaintiff reported unemployment compensation of $890. Plaintiff testified that she received that unemployment compensation in November and December 2014, while she was underemployed by Wooster. Plaintiff's 2014 bank records indicate that she received $1,068 in unemployment compensation in January 2014 and the first week of February 2014. Plaintiff testified that she was required to electronically submit proof of her job search to the Employment Department while she was receiving unemployment compensation. However, she did not provide any records relating to her job search to the court. Based on the inconsistent and missing evidence, the court is unable to determine when Plaintiff was unemployed or the total amount of unemployment compensation she received.

C.      *Plaintiff's Child Care Expenses*

As discussed above, the court found Sweet to be a credible witness and is persuaded that Sweet cared for Plaintiff's child in 2014. The court is also persuaded that Plaintiff paid Sweet $6,415 for child care in 2014. In order for Plaintiff to claim a working family credit and a child care credit based on her child care payments, the child care payments must have been made for the purpose of allowing Plaintiff to work, seek employment, or attend school.

Plaintiff failed to prove that she was employed, seeking employment, or attending school in January 2014. Her bank records indicate that she received unemployment compensation during that time period. However, Plaintiff's testimony contradicted her bank records, and she failed to provide any evidence pertaining to her job search. As a result, Plaintiff is not allowed a credit for child care expenses paid in January 2014, which totaled $515. (Ptf's Ex 8 at 1.)

Plaintiff also failed to prove that she was employed, seeking employment, or attending school in August 2014. Plaintiff testified that she worked from Stumph through July 2014 and began working for Green Streak starting August 4, 2014. The court accepts Plaintiff's testimony that she worked for Stumph through July 2014. However, the Employee Detail for Green Streak indicates that Plaintiff's employment began in September 2014. The Employee Detail contradicts Plaintiff's testimony regarding when she began working for Green Streak. The court finds the Employee Detail more reliable than Plaintiff's testimony. Plaintiff has not proved by a preponderance of the evidence that she was working in August 2014. She is not, therefore, allowed a credit for child care expenses paid in August 2014, which totaled $600. (Ptf's Ex 8 at 5.)

For the 2014 tax year, Plaintiff is allowed a working family credit and a child care credit based on her child care expenses paid February through July 2014, and September through December 12, 2014. Those child care payments totaled $5,300. (*See* Ptf's Ex 8.)

### III. COSTS AND DISBURSEMENTS FACTS AND ANALYSIS

Plaintiff filed a Statement for Costs and Disbursements requesting a total award of $3,872. (Ptf's Statement at 1.) With the exception of the $252 filing fee, that amount is entirely comprised of hourly charges for Plaintiff's representative's "professional services." (*Id.* at 7.) Plaintiff's representative is a CPA. Defendant objected to a cost award in this case for several

reasons, including Plaintiff's failure to file accurate tax returns and Plaintiff's failure to promptly provide requested documentation. (Def's Objection at 1–2.) Defendant asserted that it acted reasonably and in good faith during the audit and appeal. (*Id.*) Defendant further noted that Plaintiff is not entitled to recover accountant fees as costs and disbursements. (*Id.* at 3.)

The Magistrate Division has discretionary authority under ORS 305.490(2) to award costs and disbursements to the prevailing party. *Wihtol I v. Dept. of Rev.*, 21 OTR 260, 267–68 (2013); TCR-MD 16. Although TCR-MD 16 does not define "prevailing party," this court has looked for guidance to the definition of "prevailing party" for the purpose of awarding attorney fees, found in ORS 20.077(2). *See*, *e.g.*, *Stade v. Dept. of Rev.*, TC-MD 150369N, WL 282206 at *5 (Jan 21, 2016). ORS 20.077(2) defines the prevailing party as "the party who receives a favorable judgment or arbitration award on the claim." Thus, the court must determine the prevailing party on a "claim-by-claim basis," weighing "what was sought by each party against the result obtained." *Stade*, 2016 WL 282206 at *5 (citations and internal quotation marks omitted).

Plaintiff is the prevailing party with respect to her claim for a 2014 working family credit and child care credit. However, Defendant is correct that Plaintiff is not entitled to recover accountant fees in the Magistrate Division. *See Biss v. Dept. of. Rev.*, TC-MD 130485C (May 15, 2014) (concluding that "accountant fees are 'expenses,' not 'costs and disbursements[,]' " and that the Magistrate Division has no authority to award reasonable expenses under ORS 305.490(3)(a)). Thus, Plaintiff is—at most—eligible to recover her $252 filing fee.

The court has discretion to decide whether to award Plaintiff her filing fee. This court has identified several considerations relevant to its decision to award costs, including whether the originally filed return was accurate, whether the taxpayer availed herself of any administrative

appeal available to her, and "whether the outcome on appeal involved wins and losses for both parties." *Stade*, 2016 WL 282206 at *5; *see also Wihtol v. Multnomah County Assessor,* TC-MD 120762N, WL 274126 at *5 (Jan 24, 2014). Plaintiff conceded that her originally filed 2014 income tax return was inaccurate. She failed to report $6,520 of income and did not report that income until it appeared to her advantage to do so. Prior to trial, Defendant agreed to allow Plaintiff a working family credit and a child care credit based upon Plaintiff's reported and documented employment in 2014. Defendant's position at that point in time was reasonable based upon the available evidence. For those reasons, the court declines to award Plaintiff her filing fee. Plaintiff's request for costs and disbursements is denied.

## IV. CONCLUSION

After careful consideration, the court finds that Plaintiff was employed from the beginning of February 2014 through July 2014, and from the beginning of September through December 12, 2014. Plaintiff's 2014 gross income is increased by $6,520 to include her previously unreported compensation. For the 2014 tax year, Plaintiff is allowed a working family credit and a child care credit based on child care payments of $5,300. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's 2014 gross income is increased by $6,520 to include her previously unreported compensation.

IT IS FURTHER DECIDED that, for the 2014 tax year, Plaintiff is allowed a working family credit and a child care credit based on child care payments of $5,300.

/ / /

/ / /

/ / /

/ / /

IT IS FURTHER DECIDED that Plaintiff's request for costs and disbursements is denied.

Dated this ____ day of August 2016.

_____
ALLISON R. BOOMER
MAGISTRATE

*If you want to appeal this Final Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within <u>60</u> days after the date of the Final Decision or this Final Decision cannot be changed. TCR-MD 19 B.*

*This document was filed and entered on August 15, 2016.*