IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

CORINE WEHNER and VIVIAN WEHNER,　)
　　　　　　　　　　　　　　　　　　)
　　　　　　Plaintiffs,　　　　　　　)　　TC-MD 210247G
　　　　　　　　　　　　　　　　　　)
　　　v.　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
BENTON COUNTY ASSESSOR,　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　Defendant.　　　　　　　)　　**DECISION**

Plaintiffs appeal from an order of the board of property tax appeals sustaining the

subject's 2020–21 tax roll real market value.  Plaintiffs were represented at trial by Dieter

Wehner, a real estate broker.  Plaintiffs called the following witnesses: Dieter Wehner; David

Cale, the listing broker in the subject's sale to Plaintiffs; Dr. Gary Albert Goby, the seller in the

subject's sale to Plaintiffs; and Plaintiff Corine Wehner.  Defendant was represented by its

appraiser, Michele Collins, who also testified.  Defendant's Exhibits 1, 1a, 1b, 2, 2a, 2b, 3, 3a, 4,

and 5 were admitted; Plaintiff did not submit any exhibits.

At the outset of trial, Defendant moved to dismiss on the grounds that Plaintiffs had

previously missed a deadline to provide the court with trial dates and Plaintiffs had not provided

any exhibits of their own.  The court denied Defendant's motion.

I.  STATEMENT OF FACTS

The subject comprises a large Class 6 home, garage, and workshop built in 1981 and

located on 5.85 acres in Albany.  (Ex 1.)  It is a "true Tudor" home with distinctive half-timbered

construction used in the house and garage.  (*See id*.)

Plaintiffs purchased the subject from Dr. Goby in July 2020 for $826,206 in cash.  (Ex

3a.)  Dr. Goby had previously sold the subject to another buyer for $695,000 in December 2014.

(Ex 3.) He had financed a large portion of that sale himself, and in 2018 he took title back by deed in lieu of foreclosure after the buyer defaulted. (*Id*.)

The subject was listed continuously beginning January 2019, with its initial asking price of $1,100,000 reduced several times before July 2020, as shown in the following table.

| Date | Listing Price |
|---|---|
| 1/15/2019 | $1,100,000 |
| 6/17/2019 | $975,000 |
| 9/29/2019 | $950,000 |
| 11/4/2019 | $945,000 |
| 1/2/2020 | $895,000 |
| 3/26/2020 | $885,000 |

(Ex 3a.) According to the listing broker's testimony, potential buyers were deterred by the expense of remodeling the subject, which had mostly load-bearing interior walls and used plaster instead of drywall.

Dr. Goby testified he received two other offers shortly before selling to Plaintiffs, the higher of which was for about $850,000. He accepted Plaintiffs' offer of $826,206 cash instead because both other offers sought seller financing, which Dr. Goby was unwilling to provide again after the previous buyer's default. Dr. Goby did not know Plaintiffs before he accepted their offer.

Although the subject's land is assigned three tax accounts, it comprises only one saleable parcel. (Ex 2.) The subject's 2018 deed inaccurately described the subject as composed of multiple parcels. (*Id*.; Ex 3.) However, a document recorded in 1979 and entitled "Deed Release for Loan Purposes" provides that the subject "consisting of 5.8 acres * * * will be treated as a single lot, notwithstanding the fact that a smaller portion may be given a separate tax account." (Ex 2a.) An associate planner with the county found that the 2018 deed listing multiple parcels

/ / /

"acted as an illegal partition by deed" that would require correction before the subject could be approved for any building, septic, or land use permits. (Ex 2.)

The subject's total living area is disputed. Defendant lists it at 5,802 square feet, which includes 798 square feet of unfinished basement. (Exs 1, 1b.) Mr. Wehner testified that a 567-square-foot room on the upper floor is also unfinished and that none of the basement (including the 689-square-foot finished area) should count as living area because it lacks windows. Removing the unfinished areas from the living space would yield 4,437 square feet; removing the finished basement as well would yield 3,748 square feet.

Defendant placed real market values for the subject's three tax accounts totaling $1,369,401 on the 2020–21 tax roll. Ms. Collins did not prepare an appraisal and testified that it was difficult to find sales comparable to the subject. She identified three sales in Albany that she considered pertinent to the subject's valuation: a 3,360-square-foot, Class 6 home built in 2003 that sold in July 2019 for $920,000; a 3,596-square-foot, Class 6 home also built in 2003 that sold in December 2019 for $774,900; and a 3,472-square-foot, Class 5+ home built in 2018 that sold in April 2019 for $785,000. (Ex 4.) All those homes were sited on less land than the subject, with lots ranging from 1.84 to 3.23 acres. (*Id*.)

Plaintiffs request the court order the reduction of the subject's 2020–21 real market value to $816,852, an amount Plaintiffs claim is equal to its July 2020 sale price when time-trended backward to the assessment date. Mr. Wehner testified the market was rising slowly during the first part of 2020. Defendant requests the court uphold the roll value of $1,369,401.

## II. ANALYSIS

The ultimate issue is the subject's 2020–21 real market value, and the case hinges on the suitability of the subject's 2020 sale as evidence of that value. Defendant argues that sale should

be disregarded because it occurred after the assessment date and because the error in the subject's legal description renders it ineligible for use in a ratio study.

Because Plaintiffs seek a change in the tax roll, they must bear the burden of proof on all questions of fact. ORS 305.427.[1] That burden can be met by supplying "competent evidence what the appropriate value of the property was as of the assessment date in question"—here, January 1, 2020. *Woods v. Dept. of Rev.*, 16 OTR 56, 59 (2002). Such evidence "includes appraisal reports and sales adjusted for time, location, size, quality, and other distinguishing differences, and competent testimony from licensed professionals such as appraisers, real estate agents and licensed brokers." *Yarbrough v. Dept. of Rev.*, 21 OTR 40, 44 (2012).

Recent sales of the subject property have been singled out by our Supreme Court as having significant probative value. *See Kem v. Dept. of Rev.*, 267 Or 111, 114, 514 P2d 1335 (1973); *Ernst Bros. Corp. v. Dept. of Rev.*, 320 Or 294, 300, 882 P2d 591 (1994). "If the sale is a recent, voluntary, arm's length transaction between a buyer and seller, both of whom are knowledgeable and willing, then the sales price, while certainly not conclusive, is very persuasive of the market value." *Kem*, 267 Or at 114. This court has also stated that a recent sale "is considered one of the most reliable indicators of value, compared to estimates based on projected income generation and other approaches." *Tesoro Logistics Nw. Pipeline LLC v. Dept. of Rev.*, TC 5252, 2021 WL 670471 at *7 (Or Tax Feb 19, 2021), *modified on recons*, TC 5252, 2021 WL 1976619 (Or Tax May 18, 2021). Whether a sale is sufficiently "recent" to constitute a persuasive indicator of market value depends on "the similarity of conditions affecting value at the time of the transaction and conditions affecting value at the time of the assessment." *Sabin v. Dept. of Rev.*, 270 Or 422, 427–28, 528 P2d 69, 71 (1974) (holding that sale almost two years

_____

[1] The court's references to the Oregon Revised Statutes (ORS) are to 2019.

after assessment date was persuasive of market value where no evidence of change in market conditions).

The courts have repeatedly rejected the argument that a sale occurring after the assessment date cannot be used as evidence in a valuation appeal. In *Ernst Brothers*, 320 Or at 305, our Supreme Court stated:

> "In the absence of evidence showing a change in the underlying conditions affecting the value of a property between the assessment date and the sale date, a sale of property as a basis for assessing the value of that property is no less persuasive because that sale occurred within a reasonable time *after* the assessment date. *Sabin v. Dept. of Rev.*, 270 Or. 422, 427, 528 P.2d 69 (1974). * * *."

(Emphasis in original.) *See also MacHaffie v. Dept. of Rev.*, 312 Or 122, 129–30, 817 P2d 1311 (1991) (holding sale of subject subsequent to assessment date "can be persuasive evidence of market value, if it was an arm's-length transaction between a knowledgeable buyer and seller"); *Dept. of Rev. v. Sahhali S., LLC*, 21 OTR 148, 155 (2013) ("Post assessment date sales may be used when it is shown that markets have not moved significantly during the post assessment period").

Defendant raises a concern about relying on the subject's sale when the legal description error renders it ineligible for use in a ratio study, but did not explain why a property's sale must be suitable for use in a ratio study in order to be persuasive of its own real market value. A ratio study determines trends for use in mass appraisal.

This court has previously observed that property owners must be vigilant in auditing the assessment roll because, conscientious though assessors may be, their necessary reliance on mass appraisal techniques leads to errors. *Jones v. Dept. of Rev.*, 12 OTR 237, 241–42 (1992), *aff'd*, 315 Or 497, 847 P2d 407 (1993). For that reason, assessors as well as taxpayers may present the court with evidence of a value that differs from the value previously placed on the roll:

"Assessed values are typically based on mass appraisal techniques. As a property tax appeal proceeds, the property is given more individual attention and, consequently, the determination of value becomes more refined. Because the goal of contested proceedings is to determine the real market value of property, an assessor must be allowed to present evidence of that value."

*Clark v. Dept. of Rev.*, 14 OTR 221, 226 (1997). It is a "fundamental principle" that "[a]lthough mass appraisal is a technique that has a role in the general administration of the property tax laws, once litigation occurs regarding the [real market value] of any property, the matter is a question of fact to be established in the litigation process." *Freitag v. Dept. of Rev.*, 19 OTR 337, 338 (2007).

For that reason, concern about excluding the subject's sale from the ratio study is misplaced here. The goal of this litigation is to determine the subject's real market value, not to gather data for a mass appraisal. Defendant has introduced no evidence or testimony that a deed error hinders the use of a property's own sale in its valuation. The contrary would appear true: Where the same deed error is present on both the assessment date and the sale date, use of the sale accounts for the effect of the error without further adjustment.

Here, the subject's July 2020 sale price is weighty evidence of its market value on January 1, 2020. With an 18-month listing history, a buyer and seller unknown to each other, and no evidence of a significant change in the market over the intervening months, the evidence shows the sale was recent, voluntary, and arm's-length. *See Kem*, 267 Or at 114. The fact it occurred seven months after the assessment date in no way diminishes the sale's probative value. *See Ernst Brothers*, 320 Or at 305. Because the 2018 deed was current on both the assessment date and the sale date, any effect of its error on real market value is included in the sale price.

Little evidence other than the subject's sale was presented. Defendant's appraiser did not develop an appraisal, and the comparables she submitted were unadjusted. *Cf. Yarbrough v. Dept. of Rev.*, 21 OTR at 44. Even though those comparables were much more recently built—in

2003 and 2018—they sold for significantly under the subject's tax roll real market value; in fact, they bracket Plaintiff's requested real market value. Without adjustments it is difficult to weigh the comparables' smaller sizes against the subject's 1981 construction, unfinished interior, deed error, and expensive-to-remodel Tudor architecture. All told, the comparables are of limited use, but they are by no means inconsistent with a real market value equal to the sale price.

Although Plaintiffs requested that the subject's sale price be time trended backward to the assessment date, no evidence was presented from which the court could determine an appropriate trend. The subject's July 2020 sale price is the best indicator of its value on the assessment date.

### III.  CONCLUSION

The evidence shows that the subject is overvalued on the 2020–21 tax roll. Now, therefore,

IT IS THE DECISION OF THIS COURT that the subject's 2020–21 real market value was $826,206.

Dated this ＿＿ day of November 2021.

POUL F. LUNDGREN
MAGISTRATE

*If you want to appeal this Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within <u>60</u> days after the date of this Decision or this Decision cannot be changed.  TCR-MD 19 B.*

*Some appeal deadlines were extended in response to the Covid-19 emergency. Additional information is available at <u>https://www.courts.oregon.gov/courts/tax</u>*

*This document was signed by Magistrate Poul F. Lundgren and entered on November 4, 2021.*