40 September 18, 2012 No. 5

IN THE OREGON TAX COURT
REGULAR DIVISION

Jack R. YARBROUGH,
*Plaintiff,*

*v.*

DEPARTMENT OF REVENUE,
*Defendant*,

*and*

MARION COUNTY ASSESSOR,
*Defendant-Intervenor.*

(TC 5075)

Plaintiff (taxpayer) appealed from a Magistrate Division decision as to the real market value (RMV) of real property owned by taxpayer in Marion County. Following trial the court found that taxpayer had not borne the burden of proving his proposed RMV for the property.

Trial was held July 3, 2012, in the courtroom of the Oregon Tax Court, Salem.

William H. Ghiorso, Attorney at Law, Salem, argued the cause for Plaintiff (taxpayer).

Douglas M. Adair, Senior Assistant Attorney General, Department of Justice, Salem, filed an Answer for Defendant Department of Revenue (the department) but did not argue the cause.

Scott A. Norris, Marion County Counsel, Salem, argued the cause for Defendant-Intervenor Marion County Assessor, (the county).

Decision for Defendant-Intervenor rendered September 18, 2012.

## HENRY C. BREITHAUPT, Judge.

### I. INTRODUCTION

Plaintiff (taxpayer) appealed a real property assessment for the 2010-11 tax year. The property is identified in the Marion County Assessor's tax records as tax lot R28595 (subject property). William L. Ghiorso, Attorney at Law,

represented taxpayer. Sara Adams (Adams), certified residential appraiser employed by Associated Independent Appraisers, appeared as a witness for taxpayer. Taxpayer also testified on his own behalf. Scott A. Norris (Norris), Assistant County Counsel for Marion County, represented Defendant-Intervenor (the county). Tim Haskell (Haskell), certified residential appraiser employed by Marion County Assessor's office, appeared as a witness for the county.

## II.  FACTS

The subject property is located at 7797 Albus Road SE, Aumsville, Oregon. The parties agree that the subject property is a mostly rectangular lot, 0.66 of an acre in size. The improvements on the subject property include a manufactured home, a barn, a shop, a shed, and a pump house. The parties disagree whether the barn, shop, shed and pump house (outbuildings) slightly increase or reduce the value of the subject property.

Taxpayer appealed the 2010-11 tax year property tax assessments for the subject property to the Magistrate Division of the Oregon Tax Court. The magistrate found for the county.

Taxpayer appealed to the Regular Division alleging error in the Magistrate Division's Decision, which relied "upon the testimony and the written appraisal produced by County Appraiser Glen White." Taxpayer further elaborated that the county overvalued the outbuildings and the improvements on the property, and that "the property is worth not more than $55,000.00" At trial, taxpayer revised his requested valuation to $135,000 to be in accord with Adams' expert opinion.

Adams testified that she prepared an appraisal of taxpayer's subject property with an effective date of June 30, 2011. According to her appraisal, a sales comparison approach to value was developed because "the market approach is the best indication of value. *** The cost approach has been applied but is given minimal weight due to [the subject property's] age. The income approach has also been applied, but is also given minimal weight due to the current real estate market." Applying the sales comparison approach to

valuation, Adams' opinion of the market value for the subject property on June 30, 2011, was $135,000. Adams' appraisal noted several undesirable aspects of the subject property, perhaps the most significant being that "the subject property is located in close proximity to Highway 22[,] which [allows] road noise [to] be heard *** and [is] considered an external obsolescence to the property." Adams' appraisal also stated that she observed "some noted decline in market values over the past 12 months at approximately 2 percent per year."

Haskell stated that he prepared an appraisal using the "Market Approach" that involved "a search of comparable market data" that led him to compare the subject property to four similar properties that sold close in time to the subject property's assessment date of January 1, 2010. In his testimony, Haskell testified as to the characteristics of his comparable sales and how they suitably bracketed the subject property in age, quality, location and other pertinent factors, while differences were adjusted for with offsets aimed to control for any significant value difference arising from the unlike characteristics. Haskell's final opinion on the subject property's value was $145,000.

Haskell testified that he reviewed Adams' appraisal, and while he agreed with the two percent decline in market values for 2011, the sales study ratio analysis that the assessor's office completes on an annual basis showed a 12 percent decline in market values for the 2010 calendar year. Haskell testified that the net decline in home market values over the 18 month period between the effective date of Adams' appraisal and the 2010-11 assessment date was 13 percent. Haskell also testified that because of the decline in market values, the subject property would have had a higher value as of the correct assessment date, as opposed to the later effective date that Adams actually used. Reversing the 13 percent decline in value of Adams' appraisal to adjust for the higher value on the statutory date of assessment, Haskell testified that the subject property would have had a value of $155,250 according to Adams' appraisal after correcting her appraisal for the proper assessment date.

Taxpayer testified to the condition of the subject property by stating that the siding of the mobile home has mold and the interior has an unlevel floor that is rotting. Taxpayer also testified that he received an estimate from Greg Geison, a realtor, that the subject property could be sold for $125,000 if all of the outbuildings (other than the pump house) were removed. Taxpayer testified that he researched a bid to remove all of the outbuildings save for the pump house, and he received a bid of $18,000 for the removal costs. No testimony or evidence from the realtor or demolition bidder was received by the court.

During the trial a discrepancy arose regarding whether the requested real market value (RMV) would result in the necessary tax savings allowing the court to have jurisdiction over the case. Following the trial, counsel for the county filed a letter of clarification. The letter explained that prior to 2009, the subject property was comprised of "two non-contiguous 'parcels' (for lack of a better term), one of which is the subject property, and the other of which is [now] identified as tax lot 1402." According to the county's counsel, tax lot 1402 was sold in 2009 and the matter was handled as follows:

> "The 2009 transaction was treated by the Assessor's office as a 'split' (like a partition), because both parcels originally had the same tax lot number. As a result, all of the RMV in the 2010-11 tax year *** was put on the roll as exception value. Since all of the RMV in the 2010-11 tax year is exception value, any change to RMV *** will necessarily impact MAV; thus, this Court has jurisdiction to hear this case."

As county's counsel pointed out, the court therefore has jurisdiction because taxpayer's requested RMV would result in a tax savings.

### III.   ISSUE

What is the RMV of the subject property for the 2010-11 tax year?

## IV.   ANALYSIS

RMV is defined as:

> "[T]he amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year."

ORS 308.205(1).[1] The RMV of a given parcel of real property is a question of fact. OAR 150-308.205-(A)(2)(a) sets out three approaches that must be considered when determining the real market value of property: the sales comparison approach, cost approach, and income approach.[2] *See* ORS 308.205(2). As the party requesting affirmative relief in this proceeding, taxpayer bears the burden of proof in this proceeding on questions of fact. ORS 305.427. Thus, to succeed in this appeal, taxpayer must affirmatively prove that the RMV figure of $135,000 he has requested for the subject property is more likely than not the value of the property.

Taxpayer has the burden of "proving his case by a preponderance of the evidence," which means "the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971). This court has stated that "it is not enough for a taxpayer to criticize a county's position. Taxpayers must provide competent evidence of the RMV of their property." *Poddar v. Dept. of Rev.*, 18 OTR 324, 332 (2005) (quoting *Woods v. Dept. of Rev.*, 16 OTR 56, 59 (2002) (citation omitted)). Competent evidence includes appraisal reports and sales adjusted for time, location, size, quality, and other distinguishing differences, and competent testimony from licensed professionals such as appraisers, real estate agents and licensed brokers.

Taxpayer offered testimony from Adams to show that the county's appraisal overvalued the subject property because Haskell's appraisal did not accurately value the

---

[1]   All references to the Oregon Revised Statutes (ORS) are to the 2009 edition.

[2]   All references to Oregon Administrative Rules (OAR) are to the 2010 edition.

subject property's poor condition and undesirable characteristics. "The responsibility of an appraiser is to review and evaluate market data, and base conclusions on such data. Personal conclusions with no basis in actual market data are entitled to little or no weight." *McKee v. Dept. of Rev.*, 18 OTR 58, 64 (2004). In *McKee*, the county's appraiser gave an opinion on value for a property without considering what effect a conservation easement would have on value and without providing market data to support his adjustments to the comparable sales used to determine the value for the subject property. The court experienced a similar phenomenon in the present case when Adams offered an appraisal and an opinion on value for the subject property "as of" June 30, 2011. For the 2010-11 tax year at issue, the assessment date was January 1, 2010. ORS 308.210(1). The timing of this valuation leaves an 18 month gap between Adams' valuation and the assessment date for the 2010-11 tax year, and leaves the court to wonder about the nature of the market and comparable sales back on the January 1, 2010, assessment date. Taxpayer failed to provide any meaningful explanation for the gap in time.

Meanwhile, Adams' appraisal documented "some noted decline in market values over the past 12 months at approximately 2% per year," though no explanation was offered regarding how she arrived at this rate of decline, or why she did not make any time adjustments to the comparable sales used in her appraisal despite the sale dates ranging from July 2, 2010 to March 18, 2011. Haskell testified that properly adjusting Adams' appraisal to reflect the January 1, 2010, assessment date would value the subject property at $155,250, which is higher than the county's appraisal. Adams made no attempt to correlate the value she determined to the value as of the assessment date. As a result, the court does not find either the appraisal report or the testimony of Adams to be reliable. Taxpayer's testimony was also insufficient to carry his burden of proof due to its reliance on lay opinion, expert statements offered out of court without the possibility for cross examination, and a lack of documentary evidence showing market data relating to the value of the subject property.

## V.   CONCLUSION

Taxpayer has not borne the burden of proving his proposed RMV for the property identified in the assessor's records as Account R28595. Now, therefore,

IT IS THE DECISION OF THIS COURT that the RMV of Account R29595 was $145,000 as of the January 1, 2010, assessment date.