IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

LIGHTHOUSE SQUARE LLC,          )
                                               )
          Plaintiff,              )    TC-MD 160113C
                                               )
      v.                      )
                                             )
LINCOLN COUNTY ASSESSOR,    )
                                             )
          Defendant.      )    **FINAL DECISION**[1]

Plaintiff appealed the 2015–16 tax roll real market and exception values of property identified as Accounts R236874 and R232164 (subject property).[2] A trial was held on October 26, 2016, in the Tanner Mediation Center of the Oregon Tax Court. David Emami, MBA, appeared and testified on behalf of Plaintiff. Diana Emami, MBA, also testified for Plaintiff. Kathy Leib, Oregon Registered Appraiser 3, appeared and testified on behalf of Defendant. Plaintiff's Exhibits 1 and 2 and Defendant's Exhibits A to H were admitted without objection. Plaintiff's Exhibit 3 was admitted over Defendant's objection.[3]

## I. STATEMENT OF FACTS

The subject property was a shopping center in Lincoln City, consisting of multiple buildings totaling 106,149 square feet on an 11.3-acre site. (Def's Ex F at 2.) As of the assessment date, 58 percent of that square footage was vacant. (*See id*.) The subject property's

---

[1] This Final Decision incorporates without change the court's Decision, entered February 10, 2017. The court did not receive a statement of costs and disbursements within 14 days after its Decision was entered. *See* Tax Court Rule–Magistrate Division (TCR–MD) 16 C(1).

[2] Plaintiff's Complaint appealed only the former of those two accounts, which together constitute a single shopping center. At trial, Plaintiff requested leave to amend its Complaint to include the second account. The court allowed the amendment because Defendant did not object and the parties agreed that Plaintiff had appealed both accounts to the board of property tax appeals.

[3] Defendant objected to the accuracy of a statement made by Plaintiff in its exhibit, but not to the exhibit's timeliness.

net income had declined during each of the four years preceding the assessment date with the departure of major tenants, including Goodwill Industries at the end of 2014. (Ptf's Ex 2 at 3–6; Def's Ex D at 8.) Defendant had not taxed the portion of the property occupied by Goodwill industries. As a result of that company's departure, Defendant added exception value to the tax roll in the amount of $525,460. (*See* Def's Ex A at 15; D at 8.)

A.    *Plaintiff's Evidence of Value*

Plaintiff did not offer an appraisal or any written estimate of value into evidence. It provided profit and loss statements for years 2011 through 2015, an August 2016 credit union statement showing Plaintiff's loan balance and two holdback accounts, a bid to replace five rooftop heat pumps dated May 2013, a "photo log" dated December 2013 depicting a roof that was penetrable by a screwdriver, damaged rooftop heat pumps, and other evidence of water damage, and additional undated photographs of instances of rust and dry rot affecting the subject property. (Ptf's Ex 2 at 1–6, 7–8; Ptf's Ex 1 at 50, 2–49, 51–63.)

David Emami testified to several factors tending to reduce the value of the subject property. (*See also* Ptf's Ex 1 at 1.) First, Plaintiff's ability to lease up the subject property was hindered by Lincoln City's "big box ordinance," which prevented Plaintiff from renting to prospective major tenants. Second, the subject property's physical characteristics limited leasing options: different sections were at different elevations, preventing them from being combined for larger tenants, and two sections were too narrow and deep to be divided for smaller tenants. Third, the economy in Lincoln City was generally poor, resulting in less demand for commercial space. And finally, the subject property's improvements suffered from significant deferred maintenance.

Plaintiff's profit and loss statements included several categories of expenses, including

large expenses for the interest paid on holdback funds and for property taxes. (Ptf's Ex 2 at 2–6.) David Emami testified that, based on his experience as a developer, a 9.5 to 10 percent capitalization rate was appropriate. Diana Emami testified to the result of her calculations of value using capitalization rates of 8, 9.5, and 10 percent and the subject property's 2014 and 2015 net income. She reached values of $3.8 million at an 8 percent capitalization rate, $3.2 million at 9.5 percent, $3.0 million at 10 percent. She reached lower values when she excluded the income from departed tenants from her calculations. Diana Emami testified that, due to the subject property's age, the cost approach was not relevant in determining its value. With respect to the sales comparison approach, she testified that her company was not aware of any shopping centers with comparable vacancy rates being sold.

B.      *Defendant's Evidence of Value*

On behalf of Defendant, Kathy Leib prepared an appraisal using the income capitalization and sales comparison approaches. In her income approach, Leib relied on the profit and loss statements provided by Plaintiff but excluded expenses for "capitalized and depreciated repairs," "fire protection," and "office expenses." (Def's Ex D at 1.) Leib included property taxes from Defendant's records as expenses because she had concluded that the figures provided by Plaintiff were inaccurate. (*Id*.) Diana Emami testified that Plaintiff's figures included personal property tax as well as real property tax.

Leib used a capitalization rate of 8 percent. She testified that she based that number on two sources: the capitalization rate used in a value appeal of the shopping center across the street from the subject property, and the capitalization rate of the property she identified as most similar to the subject property on a list of 20 shopping center sales statewide. (Def's Exs D at 26, F at 2.)

After making her adjustments to Plaintiff's reported yearly net incomes, Leib averaged the incomes for years 2011 to 2014, divided by the 8 percent capitalization rate, and concluded to a value of $7.9 million under the income capitalization approach. (Def's Ex D at 2.)

Leib's sales comparison approach relied exclusively on unadjusted data from the sale she identified as most similar to the subject property out of a list of 20 shopping center sales occurring statewide in 2013 and 2014. (Def's Ex F at 1–4.) That "most similar" sale was of a 124,774-square-foot shopping center on an 8.79-acre site in Gresham, which sold in June 2014 for $73.33 per square foot. (*Id* at 2.) By multiplying the subject property's 106,149 square feet of rentable area by $73.33, Leib concluded under the sales comparison approach to a value of $7.8 million. (*Id*. at 4.)

Although Leib's appraisal report concluded that the income capitalization method was the more reliable indicator of value, Leib candidly testified that she believed the results yielded by her analysis were incorrect and that the tax roll values were "closer to reality." Thus, she requested the tax roll real market value of $6,264,040 and tax roll exception value of $525,460 be sustained.

Plaintiff requested a tax roll real market value of $3.3 million and a tax roll exception value of $100,000.

## II. ANALYSIS

Because Plaintiff seeks affirmative relief from this court—namely, the reduction of the subject property's tax roll values—Plaintiff must bear the burden of proof. *See* ORS 305.427.[4] To bear that burden, Plaintiff "must establish by competent evidence what the appropriate value of the property was as of the assessment date in question." *Woods v. Dept. of Rev.*, 16 OTR 56,

---

[4] The court's references to the Oregon Revised Statutes (ORS) are to 2013.

58–59 (2002). Examples of competent evidence include "appraisal reports and sales adjusted for time, location, size, quality, and other distinguishing differences, and competent testimony from licensed professionals such as appraisers, real estate agents and licensed brokers." *Yarbrough v. Dept. of Rev.*, 21 OTR 40, 44 (2012). Taxpayer testimony is deficient where it relies on "lay opinion, expert statements offered out of court without the possibility for cross examination, and a lack of documentary evidence showing market data relating to the value of the subject property." *Id.* at 45.

In this case, the evidence submitted by Plaintiff did not include any market data relating to the subject property's value. Plaintiff relied exclusively on photographic evidence and the subject property's profit and loss statements. Plaintiff attempted to compensate for the lack of a market-derived capitalization rate by offering the testimony of an experienced developer regarding the likely capitalization rate in the subject property's locale. However, in such matters "[p]ersonal conclusions with no basis in actual market data are entitled to little or no weight." *McKee v. Dept. of Rev.*, 18 OTR 58, 64 (2004). Plaintiff presented no evidence at all of the correct exception value of the subject property. Plaintiff's evidence is not sufficient to establish the real market value or the exception value of the subject property.

Jurisdiction remains with the court to determine the correct real market value on the basis of the evidence. ORS 305.412. Yet Defendant's appraisal provided little basis for a roll correction. Defendant's sales comparison approach relied exclusively on a list of unadjusted and unanalyzed sales comparables from across the state. Defendant's income capitalization approach did not include market data to establish the subject property's net operating income. Defendant's capitalization rate was set to equal a single unadjusted sale in Gresham. Defendant's appraiser acknowledged the deficiencies in her report when she testified that she did not believe her report

yielded the correct value. The evidence before the court is therefore insufficient for a determination of the subject property's real market value.

### III. CONCLUSION

Plaintiff did not bear its burden of proof, and the evidence before the court is insufficient to determine the real market value of the subject property. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is denied.

Dated this ____ day of March, 2017.


_____
POUL F. LUNDGREN
MAGISTRATE

*If you want to appeal this Final Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within <u>60</u> days after the date of the Final Decision or this Final Decision cannot be changed. TCR-MD 19 B.*

*This document was filed and entered on March 2, 2017.*