IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

| | | |
|---|---|---|
| JERRY LINSTROM, | ) | |
| | ) | |
| Plaintiff, | ) | TC-MD 220086R |
| | ) | |
| v. | ) | |
| | ) | |
| LINCOLN COUNTY ASSESSOR, | ) | |
| | ) | |
| Defendant. | ) | **CORRECTED DECISION**[1] |

Plaintiff appealed Defendant's Board of Property Tax Appeals (BOPTA) Real Property

Order, dated February 17, 2022, for the 2021-22 tax year.  A remote trial was held on September

22 and September 23, 2022, via WebEx.  Tom Linstrom appeared as Plaintiff's representative

and testified on behalf of Plaintiff.  Jerry Linstrom testified his own behalf.  Ric Becker

(Becker), certified residential licensed appraiser, testified on behalf of Plaintiff.  Peter Burch

(Burch) appeared and testified on behalf of Defendant.  Plaintiff's Exhibits 1 to 5, 7, 11, 18, 19,

and 35 (pages 2 to 21) and Defendant's Exhibits A to Z were admitted into evidence.[2]  On

October 4, 2022, Plaintiff filed a request for costs and disbursements.

## I.  STATEMENT OF FACTS

The subject property, identified as Account R61258, is a narrow 5,028 square foot

riverfront parcel along the Siletz River near Highway 101, Lincoln City, and Gleneden Beach.[3]

---

[1] The Decision is being corrected due to an incorrect tax year stated in the conclusion and to address Plaintiff's request for costs and disbursements.  Changes to the original Decision are underlined.

[2] Some of Plaintiff's exhibits were renumbered during trial due to labeling errors.  An updated version of Exhibit 7 was admitted only to the extent it supplemented improperly redacted pages on the original version, but not for pages that were updated for purposes unrelated to the redactions because the new version of the exhibit was not timely exchanged.

[3] "The subject property was originally two separate lots, tax lot 301 and tax lot 501, which were combined into a single tax lot, 301, as of the 2016-17 tax year." *Linstrom v. Lincoln Cty. Assessor*, TC-MD 180084N, WL 6077843 at *1 (Or Tax M Div Nov 16, 2018) (*Linstrom I*).

Plaintiff purchased the subject property for $65,000. *See Linstrom I*, 2018 WL 6077843 at *5. Plaintiff challenges Defendant's BOPTA Order, which found the real market value of the subject property at $72,130. Specifically, Plaintiff challenges the buildability of the lot, its potential for a septic system, the square footage and value of a boat ramp and dock, the value of a shed, and Defendant's classification of the property as residential. Although Plaintiff has not applied for permits, the court is persuaded by the evidence that the lot is not buildable and would not qualify for a septic permit.[4]

A.      *Plaintiff's Evidence*

Becker testified he has been a certified licensed appraiser for 34 years. He prepared an appraisal of the subject property, as of June 6, 2022, that concluded the market value was $49,000. He did not make adjustments for the appraisal date being 17 months after the January 1, 2021, assessment date because his assignment did not include performing a retrospective appraisal. He opined that the market for a riverfront property in Lincoln County that is unbuildable and without the ability to get septic, has remained flat over several years. However, Becker did apply an adjustment for time of sale on the comparable properties in the amount of eight percent per year, to the date of June 6, 2022, based on "a matched pairing of Sales #1 and #2[.]" (Ex 7 at 8). Becker testified that he also prepared an appraisal of the subject property in 2019, which had a concluded value almost identical to his June 2022 appraisal.[5]

---

[4] This finding is in accordance with prior cases regarding the subject property: *Linstrom I*, 2018 WL 6077843; *Linstrom v. Dept. of Rev.*, 24 OTR 223 (2020) (*Linstrom II*); *Linstrom v. Lincoln Cty. Assessor*, TC-MD 200147G, WL 871211 (Or Tax M Div Mar 9, 2021) (*Linstrom III*).

[5] Plaintiff did not submit the appraisal Becker prepared in 2019 as evidence in this case and Becker was unable to recall specifics of his analysis. However, in *Linstrom II*, this court considered two appraisals of the subject property completed by Becker: one for the 2017-18 tax year valuing the subject property at $32,000, as of February 4, 2018, and one for the 2018-19 tax year valuing the subject property at $43,000, as of February 4, 2019. *Linstrom II*, 24 OTR at 232-33.

Becker relied on the sales comparison approach to value after concluding that the income and cost approach were inappropriate for the type of property under consideration. Becker selected nine comparable properties. However, he deemed the first three as most relevant and the remaining comparable properties as successively less persuasive. (*See* Ex 7 at 4-7.) Comparable 1 is located 8.9 miles from the subject property, sits on the Salmon River, and sold for $55,000 on April 15, 2022. Becker adjusted the value down by $12,500 for the site area, up by $6,500 for lack of a shed and dock, and made no adjustments for the time of sale. He concluded an indicated value for Comparable 1 was $49,500. Comparable 2 is located 9.2 miles from the subject property, sits on the Salmon River, and sold for $43,500 on June 10, 2019. Becker adjusted the value up by $10,500 for time of sale, $6,500 for no shed or dock, and down by $16,000 based on the site size, for an indicated value of $45,000. Comparable 3 is 41.54 miles from the subject property, sits on the Wilson River, and sold for $50,000 on July 30, 2020. Becker adjusted the value up by $8,000 for time of sale, $6,500 for no shed or dock, $7,500 for "electrical available" but no water, and down by $24,500 for site size. The total indicated value was adjusted to $47,500.

On the assessment date, the subject property was improved with a floating dock and ramp totaling 1,321 square feet and a multi-purpose shed with a covered porch totaling 152 square feet. (Ex B at 3.) Plaintiff disputes these measurements because some of the dock boards were removed, and the railings moved inward for handicapped accessibility. Tom Linstrom testified that he measured the ramp and dock intentionally disregarding the extra space beyond the railings and eliminating square footage where boards had been removed. On inspection, Becker measured the dock at 21 by 26 feet, resulting in 546 square feet of usable area. Although Becker did measure the dock, he testified that the actual square footage was not significant because the age and poor condition of the dock made its value negligible. Becker contacted individuals from

Marshall & Swift and worked through an estimate cost of the dock, ramp, and shed as new, and depreciated those costs for age and condition. Becker opined the combined value of the items was $6,500.

Using the Marshall & Swift valuation program to estimate the value of the dock alone, Becker multiplied the total square footage of the dock by $57 per square foot, and reduced the value by 83.6 percent for depreciation, resulting in a value of $4,978. However, he found that the dock was built before the current records were first maintained, so he "conservatively" reduced the value down from $4,978 to $3,000, and then increased it by $1,500 for the wood ramp, for a total dock value of $4,500. He added $2,000 to that value for the shed and the property fence. (Ex 7 at 10.)

B. *Defendant's Evidence*

Burch testified he is Property Appraiser II and has worked for Defendant for three years. He previously worked in residential construction for about 18 years. He prepared a retrospective opinion of value of the subject property as of January 1, 2021. (*See* Exs C-I.) Burch selected five comparable sales to value the subject property. (*See* Ex G.)

Comparable 1 is located 3.1 miles from the subject property, sits on the Siletz River, and sold for $125,000 on September 19, 2019. The property has an illegal septic system and is likely unbuildable. Burch adjusted for site size (-$8,493), shed size (-$2,152), a porch ($1,932), a fence ($4,799), and because the time of sale was the three and a half months before the assessment date ($28,406). Comparable 2 is located 11.06 miles from the subject property, sits on the Siletz River, and sold for $55,000 on October 6, 2018. Burch adjusted for site size (-$2,279), a dock ($26,151), shed ($2,800), porch ($1,932), fence ($4,799), and for the sale date ($22,498). Comparable 3 is located 43.9 miles from the subject property, sits on the Alsea River, and sold

for $99,900 on December 17, 2020.  Burch adjusted for site size (-$51,493), time of sale ($1,513), electricity available at the street ($4,000), no water ($10,900), and dock, shed, porch, and fence in the same amounts as Comparable 2.  Comparable 4 is located 7.9 miles from the subject property, sits on the Siletz River, and sold for $264,900 on March 18, 2021.  Burch adjusted for site size (-$205,356), time of sale (-$12,040), and no dock, shed, porch, or fence in the same amounts as Comparable 2.  He also adjusted for electricity available at the street and no suitable well site in the same amounts as Comparable 3.  Comparable 5 is located 8.4 miles from the subject property, sits on the Siletz River, and sold for $125,000 on June 4, 2021.  Burch adjusted for site size (-$15,615), time of sale (-$9,469), and dock, shed, porch, fence, concrete, and deck in the amounts of $18,306, $187, -$2,362, $4,799, -$166, and -$1,683, respectively.  He also made a negative adjustment of $11,000 for a septic system.

Burch analyzed the boat dock, ramp, shed, and fence using the Marshall & Swift valuation program.  He found the price of the dock and ramp, deducted for the missing boards by assuming the dock was 75 percent complete, and depreciated for age by 35 percent.

Burch testified that he based his adjustments for time of sale on Defendant's self-titled Double Sales Time Trend Study.  (*See* Ex N.)  Properties in the time study were all in the same classification as the subject property and had been sold twice in a short period of time.  He testified that he could not determine whether some of the properties in the time study had improvements and/or a septic system.  Based on the data in the time study, Burch found that prices for properties in the same classification as the subject property appreciated by 0.973 percent per month during 2019, 1.899 percent per month during 2020, and 1.515 percent per month during 2021.  (*Id.*)

/ / /

Burch concluded that the value of the subject property as of January 1, 2021, using the sales comparison approach was $102,500. (Ex G at 8.) He found the value of the subject property using the cost approach was $103,160 and reconciled the values to arrive at his conclusion of value at $102,830.

## II. ANALYSIS

A.     *Real Market Value*

The issue before the court is the real market value of the subject property for the 2021-22 tax year. As the party seeking affirmative relief, Plaintiff bears the burden of proof and must establish his case by a preponderance of the evidence. *See* ORS 305.427. A "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Rev.*, 4 OTR 302, 312 (1971).

"Real market value is the standard used throughout the ad valorem statutes except for special assessments." *Richardson v. Clackamas Cty. Assessor*, TC-MD 020869D, WL 21263620 at *2 (Or Tax M Div Mar 26, 2003) (citations omitted). Real market value is defined by ORS 308.205(1),[6] which states:

> "Real market value of all property, real and personal, means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year."

The assessment date for the 2021-22 tax year is January 1, 2021. *See* ORS 308.007; *see also* ORS 308.210. The real market value of property "shall be determined by methods and procedures in accordance with rules adopted by the Department of Revenue[.]" ORS 308.205(2). The three approaches to value that must be considered are: (1) the cost approach; (2)

---

[6] The court's references to the Oregon Revised Statutes are to 2019.

the sales comparison approach; and (3) the income approach. OAR 150-308-0240(2)(a). Although all three approaches must be considered, all three approaches may not be applicable in a given case. *Id.* Here, both parties primarily relied on the sales comparison approach, although they also considered the cost approach with respect to the boat ramp, dock, and shed.

For the sales comparison approach, the "court looks for arm's length sale transactions of property similar in size, quality, age and location" to the subject property. *Richardson*, 2003 WL 21263620 at *3. "Competent evidence includes appraisal reports and sales adjusted for time, location, size, quality, and other distinguishing differences, and competent testimony from licensed professionals such as appraisers, real estate agents and licensed brokers." *Yarbrough v. Dept. of Rev.*, 21 OTR 40, 44 (2012).

Plaintiff relies on Becker's appraisal that valued the subject property at $49,000 as of June 6, 2022. This is an obvious error because the assessment date is January 1, 2021—17 months before the effective date of Becker's appraisal. The appraisal report does not account for the time difference correctly. Instead, Becker used a time trend factor of eight percent based on a sample size of only two properties, Comparable properties 1 and 2, and then applied them to the date of June 6, 2022, rather than the assessment date. Plaintiff and Becker should have anticipated this problem because a recent decision by this court, entered on September 24, 2020, specifically mentioned Becker's lack of adjustments for time of sale as a problem for Plaintiff. *See Linstrom II*, 24 OTR at 228.

Upon realization of this critical error at trial, Plaintiff attempted to rehabilitate it by asking Becker whether he remembered preparing the 2019 appraisal he prepared in connection with *Linstrom II*. Becker could not recall the specifics of the appraisal but did remember his conclusion that it was about the same as his current appraisal. Plaintiff did not offer the 2019

appraisal into evidence. However, as noted in footnote four, the court in *Linstrom II* identified two appraisal reports submitted by Becker that show a dramatic increase in value from 2018 to 2019, which undercuts his testimony that the market has remined "flat." Plaintiff did not present persuasive evidence that market remained flat prior to, or after, the assessment date.

In *Yarbrough*, a taxpayer presented an appraisal for a property with an effective date of June 30, 2011. *Yarbrough*, 21 OTR at 41. However, the assessment date was January 1, 2010. *Id*. at 42. The taxpayer did not make a time adjustment and failed to "provide any meaningful explanation for the gap in time." *Id*. at 45. Thus, the court found the taxpayer's appraisal in that case as unreliable. The gap identified in *Yarbrough* is near the exact same length in time as the17-month period between the assessment date and effective date of Becker's appraisal in this case. The court concludes that Becker's failure to make appropriate time adjustments renders his report as unreliable. Consequently, Plaintiff has failed to meet his burden of proof on the value of the subject property as of the assessment date.

Defendant's conclusion of value is based on the testimony and valuation report prepared by Burch, in which he analyzed the subject property using the sales comparison approach supplemented with the cost approach for the boat ramp, dock, and shed. Burch selected five comparable sales. However, he treated Comparable 1 as an outlier. Burch's chosen comparable properties are primarily located on the same river, unbuildable, and do not have legal septic systems. Plaintiff's primary challenges to Burch's report are twofold: Plaintiff first takes issue with Burch's time adjustments based on sale dates, and second, with the square footage and value of the boat dock and ramp.

With regard to Defendant's time adjustments, Plaintiff specifically takes issue with Defendant's data, as it uses a property classification that may include sites with homes and septic

systems, which may have significantly different rates of appreciation than the subject property—a recreational lot. This court shares Plaintiff's concerns and its questioning of Burch at trial reflected that point. However, this exact argument was already litigated in *Linstrom II*. A quote from that case is instructive:

> "As to the time-based adjustments, the court starts with background. Each year, an assessor is required to conduct a 'ratio study' based on property sales data the assessor collects during the calendar year. ORS 309.200(2). Among other things, the ratio study estimates the 'percentage relationship between the total prior year's real market value of each class of taxable property on the prior assessment roll and the total current real market value of the same properties in each class on the current assessment roll.' Oregon Administrative Rule ('OAR') 150-309-0230(12)(a). This year-to-year comparison is a tool that allows an assessor to annually estimate the value of properties as of the prescribed time of 1:00 a.m. on January 1 based on trends apparent in the study, as opposed to viewing and studying each property individually at that hour. *See* ORS 308.210(1) (requiring assessor to record value 'as of' that date and time). A separate ratio study is required for each property class.

> "* * * Because an assessor prepares a separate ratio study for each class of property, it is theoretically possible that [the county's] selection of an incorrect class for the Property may have led to an incorrect percentage value change for trending purposes and thus to an incorrect value indicator for each comparable property. However, Plaintiff put forward no evidence that any misclassification distorted [the county's] value indicator for any comparable property."

*Linstrom II*, 24 OTR at 227-28.

The argument and the presentation in this case mirror those in *Linstrom II*. Burch used a double sale study using a class of property that could potentially skew the results. Yet Plaintiff chose not to reform his approach and put forward affirmative evidence that "any misclassification distorted" the values, as the court stated in *Linstrom II*. *Linstrom II*, 24 OTR at 228. Concerns and criticisms about Defendant's evidence are not enough. The court has long held "it is not enough for a taxpayer to criticize a county's position. Taxpayers must provide competent evidence of the [real market value] of their property." *Woods v. Dept. of Rev.*, 16 OTR 56, 59 (2002).

As to Plaintiff's challenge to the size of the dock and ramp, the court deems Defendant's approach more reasonable. Removing boards from a dock and relocating railings for handicapped accessibility does not change the actual measurements of the dock and ramp. Defendant's approach of reducing the percentage completion of the dock is more persuasive.

In his final reconciliation, Burch averages the values he found using the cost and sales comparison approaches. However, the court finds the cost approach is useful only the extent it assists in making adjustments within the sales comparison approach. Thus, the court rejects Defendant's reconciliation and finds the value of the subject property by the sales comparison approach, which concluded a value of $102,500.

B.      *Request for Costs and Disbursements*

Plaintiff filed a request for costs and disbursements. Magistrates have discretionary authority to award a prevailing parties' costs and disbursements "as in equity suits in the circuit court." ORS 305.490(3); *Wihtol v. Dept. of Rev.*, 21 OTR 260, 267-68 (2013). TCR 68 A(2) provides for an award of "costs and disbursement" which are defined as "reasonable and necessary expenses incurred in the prosecution or defense of an action other than for legal services, and include the fees of officers; the statutory fees for witnesses; * * * the necessary expense of copying of any public record, book, or document used as evidence in the trial; * * * and any other expense specifically allowed by agreement, by these rules, by TCR 68 A(2), or by other rule or statute."

Defendant did not file an objection to Plaintiff's request for costs and disbursements. However, because Plaintiff is not the prevailing party in this appeal, his request for costs and disbursements is denied.

/ / /

### III. CONCLUSION

Plaintiff's appraisal contained errors, which render it unreliable. Defendant's appraisal of the property, while imperfect, is the best evidence of value that was presented to the court. Thus, the court finds the real market value as of the assessment date was $102,500. Plaintiff's request for costs and disbursements fails because he is not the prevailing party. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is denied.

IT IS FURTHER DECIDED that the real market value of the subject property for the 2021-22 tax year is $102,500.

IT IS FURTHER DECIDED that Plaintiff's request for costs and disbursements is denied.

Dated this _____ day of May 2023.

_____
RICHARD DAVIS
MAGISTRATE

*If you want to appeal this Decision, file a complaint in the Regular Division of the Oregon Tax Court, by __mailing__ to: 1163 State Street, Salem, OR 97301-2563; or by __hand delivery__ to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within __60__ days after the date of this Decision or this Decision cannot be changed. TCR-MD 19 B.*

*This document was signed by Magistrate Richard Davis and entered on May 2, 2023.*